RICHARDSON BROS. v. PETERSEN ET AL.

1. **Landlord's Lien**: PROPERTY SUBJECT TO: PURCHASER WITHOUT KNOWLEDGE. A farm tenant, the head of a family, kept and used a span of horses upon the leased premises. The horses were kept for use on the premises, and not for sale, and were the only horses owned or used by the tenant. The lease was not recorded, and there was no lien or incumbrance against the horses, of record. Before any rent was due, the tenant sold the horses to a person who had no actual knowledge of the lease, or where the horses were kept, and then absconded with all his property leaving the rent unpaid. Held:

    1. That the horses were subject to the landlord's lien for rent.

    2. That the sale to a party who had no knowledge thereof, did not defeat the lien, or release the property therefrom.

*Appeal from Scott District Court.*

TUESDAY, JUNE 13.

ACTION to enforce, by attachment, a landlord's lien. The cause was tried without a jury, and judgment rendered for plaintiffs. The intervenor appeals.

*Fred Heinz*, for appellant.

*Waterman & Boyle*, and *Thompson & French*, for appellees.

BECK, J.—At a former term of this court, an opinion was filed in this case, reversing the judgment of the court below. Upon a petition for rehearing, the cause was again argued. Upon the second argument, we have reached the conclusion that the judgment of the District Court ought to be affirmed.

II. The action was brought to enforce the landlord's lien of plaintiffs, and upon the attachment, two horses were seized. Petersen, the tenant, is defendant in the action, and Kurz intervens, claiming to own the horses seized under the attachment. The case was tried upon the following agreed statements of facts; no other evidence was introduced:

" That the contract of lease has never been recorded; that said Petersen went into posession of said leased premises at the beginning of the term of said lease, and brought said horses thereon and resided thereon at the time he traded said horses to intervenor; that subsequently said Petersen absconded before the rent became due, without knowledge of plaintiffs, and has left no property out of which said claim for rent could be made, and his present whereabouts is unknown.

" That in October, 1880, Petersen then being the owner of said team, drove said horses to the city of Davenport, and then and there traded said horses to said intervenor for another team, and received $40.00 boot. Before making the trade with Petersen, the intervenor inquired of him whether there were any claims or liens on the horses, and Petersen said there were not, and on the strength of this representation, and without any collusion on part of said intervenor to defraud plaintiffs, the trade was made and the horses passed to the possession of said Kurz, and have never been out of his possesion until the same were attached by the sheriff in this cause, nor has he parted with his title thereto since, and said horses have never, since Kurz got them, been on said leased premises.

" The value of the attached horses is $115.00.

" Intervenor also had the public records searched and found no claims against said horses; that at the time of said trade, intervenor had no actual knowledge as to where said team was kept, nor that said lease was in existence.

" That at the time of making said trade, said horses were the only horses owned by said Petersen, which were kept or had, or used on said leased premises; that said Petersen was a tenant farmer, the head of a family, and a resident of this State when he parted with the team, which team was used by him in the prosecution of his business as such, and that it was no part of his ordinary business to buy, sell, or trade horses.

" That said Richardson Bros. reside in the city of Davenport, where said trade was made, said city being about ten miles distant from said leased premises; that they had no knowledge of said trade until after January 1, 1881, about the time suit was commenced, and that there was rent accrued, but not due, to the amount of $40.00 at the time when said trade was made."·

III.   We are required to. determine whether the landlord's lien, held by plaintiffs, was divested by the sale of the horses to the intervenor, Kurz.   Code, Sec. 2017, provides that "a landlord shall have a lien for his rent upon all crops grown upon the demised premises, and upon any other personal property of the tenant which has been used on the premises during the term, and not exempt from execution, for the period of one year after a year's rent, or the rent of a shorter period claimed, falls due."   \*   \*   \*.

1. LANDLORD'S lien: property subject to: purchaser without knowledge.

The horses in question. being used upon the demised premises, are subject to plaintiff's· lien, unless released therefrom by the sale to the intervenor.

The lien given by the statute is a charge upon the property of the tenant specified, to secure the rent due under the lease.   It attaches to the property and cannot be defeated by the sale or removal thereof.   If it could be defeated in that way at the option of·the tenant, the security would be worthless, and the purpose of the statute to protect the landlord would be defeated.

The vendor of personal property transfers the title and interest he holds therein, subject to liens recognized by the law. This rule prevails in all cases except those wherein a purchaser, without notice, is protected by statute as under the registry laws.   If a statute creating a lien provides for no protection in favor of persons having no notice thereof, property subject thereto cannot be transferred, free of the lien, on the ground that the purchaser has no notice of its existence

Unless these principles be recognized, the lien conferred by the statute above quoted would fail to give protection to the landlord.

The horses in controversy, were *used* upon the demised premises, and thus became subject to the lien. The enforcement of this lien may be a hardship upon the intervenor. But with that we have nothing to do; *ita lex scripta.*

The lien given to the landlord my be subject to the course of business of the tenant, so as not to interfere with sales of property contemplated by the character of the business prosecuted by the tenant, to which the landlord is presumed to have assented upon leasing the premises. Thus a retail dealer may sell goods in the ordinary course of the business, free from the lien of his landlord for rent, and the tenant of a farm may sell marketing, produce and live stock, which are usually kept for sale by farmers; in such cases the landlord's lien does not follow the property. The decision of this court in *Nisbit v. Bartlett*, 14 Iowa, 485, seems to be based upon these grounds. See page 487. The cow in that case was a part of the stock of the farmer, intended for sale as his course of business, governed by his interest and the market, would require. In the case before us the horses were kept for use on the farm, and not for sale, according to the tenant's ordinary business. They constituted the only team used by the tenant upon the demised premises, in their cultivation, which was his ordinary business. The character of the property involved in the two cases sufficiently distinguishes them.

It is our opinion that the judgment of the District Court ought to be

AFFIRMED.