JOHN BECK, Appellee, v. THE MINNESOTA & WESTERN GRAIN CO., Appellant.

**Landlord and tenant:** ENFORCEMENT OF LIEN. A landlord may enforce his lien for rent, upon crops grown on the leased premises, against either the tenant or his subtenant, even though he fails to show title to the leased premises in himself, or that he was in possession thereof prior to the execution of the lease.

**Recovery of rent:** ACTION AGAINST THIRD PARTY: DEMAND: EVIDENCE. In an action against a third person for the value of grain grown upon leased premises and sold by the tenant, the evidence is held to show a demand for payment (conceding that a demand was necessary to maintain the action) prior to commencement of the suit.

Limitation of action. No agreement between a tenant and his sub-
3   tenant will operate to limit the time in which the landlord may
    bring an action to enforce his rent.

*Appeal from Lyon District Court.*— HON. WM. HUTCHIN-
SON, Judge.

### TUESDAY, JUNE 12, 1906.

THE defendant purchased oats from a sub-tenant of
plaintiff, and this action is to recover for their conversion.
From judgment as prayed, defendant appeals.— *Affirmed.*

*James V. McHugh* and *Simon Fisher,* for appellant.

*C. J. Miller,* for appellee.

LADD, J.— The plaintiff leased to N. A. Walquirst, in
writing, 160 acres of land for the term of one year, begin-
ning March 1, 1903, at the agreed rental of $525, to be paid
October 1st, of that year. Thereafter Walquirst sublet the
premises to one Kresten, who raised 974 bushels of oats
thereon, and sold them to the defendant for $265.85; this
being the market price. Walquirst failed to pay the rent,
and in this action recovery of the value of the oats is sought
by the landlord. The appellant contends: (1) That as
plaintiff did not prove title to the land in himself, the court
erred in holding that he had a landlord's lien on the crop;
(2) that in any event, no demand for the property or its
value was proven; and (3) that the lien had expired before
the action was begun.

I. The land had no buildings or other improvements
thereon. No evidence tending to prove plaintiff's title, save
a contract of purchase from one Converse was introduced,
nor was it made to appear who was in the
actual or construction possession prior to the
execution of the lease. In these circum-
stances, a demise to a tenant at common law might not have

1. LANDLORD AND
   TENANT: en-
   forcement of
   lien.

been valid. Taylor's Landlord & Tenant, section 84 *et seq.* The reason for the rule was that as a chose in action could not be assigned the lease of land in the possession of another was void. But under the statutes of this state, authorizing the assignment of choses in action and the sale of an interest in land, though in the adverse possession of another, possession is not essential to the validity of a lease. Section 2916, Code; *Foster v. Young,* 35 Iowa, 27, 40. The relation of landlord and tenant is created by contract, either expressed or implied, by the terms of which one person designated " tenant " enters into possession of the land under another known as " landlord." 1 Taylor on Landlords & Tenants, section 14. The landlord may not have any interest in the title to the demised premises, but whether he has or not cannot be questioned by the tenant before the expiration of his lease, and whilst in possession under it, unless based upon some distinct and independent claim to the land. *Bowdish v. City of Dubuque,* 38 Iowa, 341. Possibly a want of consideration might be pleaded in such a case to defeat the claim for rent, but under the law of this state a consideration is implied from the fact that the lease was in writing. Nor is it essential that the tenant should have been in possession in order to sublet. The lessee, having an *interesse termini,* may make a good lease, without entering into possession. Section 85 of Taylor on Landlord & Tenant. The rule by which the tenant is estopped from denying his landlord's title is also applicable against all persons entering into possession through or under the tenant, and therefore one to whom the tenant leases the premises is as fully estopped from questioning the landlord's title to the land, as the tenant himself. *Bonds v. Smith,* 106 N. C. 553 (11 S. E. 322); *Merchants' Bank v. Clavin,* 60 Mo. 559; *Ellsworth v. Hale,* 33 Ark. 633; 18 Am. & Eng. Ency. of Law, 417. See, also, *Hardin v. Jones,* 86 Ill. 313; *Bertram v. Cook,* 44 Mich. 396 (6 N. W. 868);

*Stewart v. Roderick,* 4 Watts & S. (Pa.) 188 (39 Am. Dec. 71).

As between the plaintiff and Walquirst, the relation of landlord and tenant existed, and with reference to the rent, section 2992 of the Code provides that " A landlord shall have a lien for his rent upon all crops grown upon the leased premises, and upon any other personal property of the tenant, which has been used or kept thereon during the term, and not exempt from execution for the period of one year after a year's rent, or the rent of a shorter period falls due.   But such lien shall not in any case continue more than six months after the expiration of the term."   The oats were grown " on the demised premises," and plaintiff had a lien thereon for the payment of his rent.   *Houghton v. Bauer,* 70 Iowa, 314; *Evans v. Collins,* 94 Iowa, 432; *Church v. Bloom,* 111 Iowa, 319; *Richardson v. Peterson,* 58 Iowa, 724.   When, if at all, was this lien terminated?   The defendant purchased the oats from the subtenant.   It acquired the title which the seller then had.   That title was subject to the plaintiff's lien.   The defendant acquired nothing more, and in appropriating the property became liable to the plaintiff for the value of the incumbrance.

II. It is argued that as defendant merely acquired the title Kresten had (*Nickelson v. Negley,* 71 Iowa, 546), a demand was essential as a condition precedent to the mainte-

**2. RECOVERY OF RENT: action against third party: demand: evidence.** nance of an action for conversion.   Conceding without deciding this, we think a proper demand was made.   One McDowell testified that prior to the commencement of the suit in 1905 he demanded the value of the oats raised upon the leased premises of defendant's agent, who responded that he had no authority to pay therefor.   Upon cross-examination McDowell testified: Q. " You met Mr. Kruger (the agent) and took a little walk with him, did you?   A. Walked to the office with him, yes.   Q. Didn't you say ' there is a little bill, and I presume you don't want to pay it do you?'   Isn't that

the language you used? A. Well, I would not say. Q. And he laughed and said, ' Not by a damn sight.' Wasn't that his reply? A. I presume so. Q. And that was all that occurred in relation to the presenting of the claim that you are testifying about? A. Similar to that, yes. Q. That is what you mean when you say you made a demand upon him? A. Yes, sir." On redirect: " I think he understood what I was making a demand for. I don't know as I told him I was acting for Mr. Beck. I was not acting for Mr. Beck. Well, I had been instructed by Mr. Beck before that time to collect the rent."

It is apparent from this evidence that the witness intended to say that though he had not been specially authorized to make the demand, he had been instructed by plaintiff to collect the rent. This necessarily included the making of the demand, and was sufficient authority for so doing. The demand was fully proven. The defendant's agent must have understood from what was said that McDowell was asking for the payment of the oats. The language employed might not have been as explicit as would have been employed between persons less intimate, but clearly indicates what both had in mind, and was fully understood, i.e., that a demand for payment was being made and refused.

III. The subtenant was a mere cropper, and had not entered upon the land after September 15, 1903. The action was commenced August 29, 1904, more than a year

3. Limitation of action.    after the subtenant's rent became due; but within a year from the time the rent of the tenant should have been paid, and within six months of the termination of his lease. The appellant argues the case on the theory that the period within which suit must be begun under the statute, to enforce the lien, should be computed from the time the subtenant agreed to pay the tenant rent, but this is not so. There was neither privity of estate nor privity of contract between the lessor and the sublessee, and therefore the lessor could not sue the subtenant upon the

tenant's covenant to pay rent. *McFarlan v. Watson,* 3 N. Y. 286; *Harvey v. McGrew,* 44 Tex. 412; note to *Fulton v. Stuart,* 2 Ohio 215 (15 Am. Dec. 542). The action was necessarily based upon the contract with the tenant and .its purpose was to enforce a lien created by statute on "all crops grown upon the demised premises," and it is immaterial whether these crops were raised by tenant or sub-tenant. *Houghton v. Bauer,* 70 Iowa, 314; *Foster v. Reid,* 78 Iowa, 205.

The lien was by virtue of the lease from plaintiff to Walquirst, and it is not important under what arrangement the subtenant Kresten raised the crop; for the lien of the landlord cannot be affected by any agreement between a lessor and a sublessee. *Forrest v. Durnell,* 86 Tex. 647. (26 S. W. 481); *Rutledge v. Walton,* 4 Yerg. (Tenn.) 458. As the action was begun within a year from the maturity of the rent sued for, and within six months of the termination of the lease upon which the action was based, it was in time. Some exceptions were taken to the rulings on the admissibility of evidence. Even though these should be conceded erroneous, enough was proven to justify the court in directing a verdict for plaintiff, and for this reason they are not considered.— *Affirmed.*