J. E. MARTIN, Appellant, v. C. S. HARPER et al., Appellees.

USURY: Assignee of Contract. An assignee of a contract may not
1 plead usury therein.

USURY: Estoppel to Plead. One who pleads a tender as the sole basis
of his right may not afterward plead usury in the contract which
gave rise to the tender.

TENDER: Keeping Tender Good. A proper and adequate tender, ac-
companying a demand for specific performance, need not,. when
action is brought, be "kept good," in the sense of actually pro-
ducing or depositing the money in court. An unconditional offer
and tender in the pleadings of full performance are sufficient.

*Appeal from Wapello District Court.*—D. M. ANDERSON, Judge.

MARCH 7, 1922.

SUIT in equity, for specific performance of agreement to
convey land. There was a decree granting in part the relief
prayed. Plaintiff appeals.—*Modified and affirmed.*

*Gillies & Daugherty* and *Roberts & Webber,* for appellant.

*Gilmore & Moon, McNett & McNett,* and *Jaques & Jaques,*
for appellees.

WEAVER, J.—The history of the transactions out of which
has arisen this litigation is quite complicated, but the questions
presented to this court are not difficult of comprehension. One
Bergman, who is a defendant herein, had undertaken to secure
title to or option contracts for a considerable area of lands in
Wapello County, supposed to contain natural coal deposits.
He had obtained an option to purchase lands belonging to one
Chisman, at the price of $34,000, upon which he had paid about
$4,000. The option was about to expire; and, not having the
money necessary to complete the purchase, Bergman sought
financial aid from the defendants Harper and Wellman. Under
date of November 30, 1917, these parties entered into a written
contract, which recites the existence of the option for the
Chisman land, the fact that Chisman has agreed to "carry back
$17,000" of the purchase price, to be secured by mortgage on
the land; that Bergman had "arranged" with Harper and
Wellman to buy the land, advancing $12,800, and to take the
title, subject to such mortgage; that Harper and Wellman
"agreed to put up" said sum of $12,800, and take title, subject

to the mortgage, and give Bergman an option for two years
from November 25, 1917, to "buy said farm for $18,300, sub-
ject to the mortgage, with interest on the entire purchase price,
and accruing taxes and insurance." On May 11, 1918, these
parties entered into another contract, embodying practically the
same terms, but providing for Bergman's right, pending the
existence of the option, to retain possession of the property, and
to have the rentals and coal royalties received from the premises.
These contracts each contained a clause for forfeiture of Berg-
man's interest in the property, on default in any of the pay-
ments he had undertaken to make. On December 3, 1919, such
default having been made, Harper and Wellman gave Bergman
written notice of their declaration of forfeiture if the contract
was not complied with in 30 days. On December 15, 1919, Berg-
man and Harper and Wellman again met, and entered into a
new contract, by which the time for performance of the agree-
ment on Bergman's part was extended to May, 1920.

Thus far, we have confined our statement to the dealings
between Bergman and Harper and Wellman. We now turn to
the manner in which the plaintiff, Martin, became a party in
interest. Prior to said deal with Harper and Wellman, Berg-
man had made the acquaintance of Martin, a resident of Min-
nesota, and had induced him to furnish various sums of money,
for purchasing or carrying options on coal lands. Some of
the money advanced by Martin had been invested by Bergman
in the option on the Chisman land, already mentioned. By cor-
respondence begun December 29, 1917, and culminating in a
written contract on April 23, 1919, between Bergman and Mar-
tin, the former assigned to the latter a one-half interest in and
to all the lands already acquired by Bergman, including the
Chisman lands. It will be seen from the foregoing that, at the
time Harper and Wellman served their notice of an intention
to claim a forfeiture of the Chisman land, Martin had, through
Bergman, already acquired a half interest in whatever right
Bergman had in the property, a fact of which Harper and Well-
man were aware. The notice for forfeiture was directed to and
served upon Bergman alone, and the agreement extending the
time for performance was also made with Bergman alone. It
is evident, however, that Martin was apprised of the service of

the notice; and on December 17, 1919, during the 30-days' period of grace, he made to Harper and Wellman written tender of the full amount due and owing to them on their contract with Bergman, including interest and costs and expenses in connection with the notice of forfeiture, and demanded conveyance of the property, as agreed in the contract. This tender was refused, and no conveyance was offered or tendered by Harper and Wellman. On December 24th of the same year, this action was begun by Martin, demanding specific performance. In his petition, Martin renewed his tender, and offered to pay the defendants any and all moneys legally due them for the property, and alleged his readiness and willingness to pay all such sums or amounts at any time, upon their execution of a proper conveyance. The petition further alleges that the contract between Harper and Wellman and Bergman, by which the latter took over the title to the land, was, in fact, in the nature of a mortgage, intended only to secure a loan made by said grantees, upon which loan Harper and Wellman were to receive a usurious bonus or rate of interest; and that, therefore, said defendants are in no event entitled to recover from the plaintiff and Bergman more than the principal sum of the debt so contracted.

Defendants deny that they took the title to the land as a mortgage security, and allege that said transaction was a bonafide purchase of the property. They admit, however, that they agreed, upon certain expressed considerations, to sell or convey the property to Bergman. They deny that plaintiff ever made an adequate or sufficient tender of the contract price of the land.

Many other matters are pleaded; but, in the narrowed scope of the issues presented by the appeal, as hereinafter shown, we regard it unnecessary to extend their statement. The trial court, after having heard the evidence offered by the respective parties, embodied its conclusions in a carefully prepared opinion, overruling the charge of usury, holding plaintiff a tenant in common with Bergman in the interest acquired by the latter in the Chisman land by virtue of the contract with Harper and Wellman, and sustaining his demand for specific performance to the extent of a one-half interest in the property, but requiring him to pay Harper and Wellman the sum of $9,511, being one

half the sum which the court finds was due at the date of the tender, December 17, 1919. In addition to such payment, the court adjudged the plaintiff to pay one half of the interest on the Chisman mortgage and one half the taxes and insurance that have accumulated since the tender. The costs of the case were taxed to the defendants. The other half of the indebtedness and charges are adjudged against Bergman, and made a lien on his half interest in the property. The plaintiff alone appeals.

The appellant submits but two propositions for the consideration of this court: First, that the contract between Harper and Wellman and Bergman was, in fact, intended by the parties to effect a loan of money to Bergman at a usurious rate of interest; and second, that the trial court improperly charged the plaintiff with interest accruing on the amount due Harper and Wellman after the date of the tender. The appellees, on their part, appear to acquiesce in the action of the trial court, and say: First, that the record does not sustain the claim or charge of usury in the contract between Bergman and Harper and Wellman; and second, that appellant was properly chargeable with interest after the tender, because he failed to keep his tender good, by depositing or bringing it into court. To these issues we shall confine our attention.

I. The claim or charge of usury was properly overruled. In the first place, the deal in question was between Bergman and Harper and Wellman. The plaintiff, Martin, had no part 1. USURY: assignee in the alleged unlawful agreement for usury. of contract. His subsequent acquirement of an interest in the contract by assignment from Bergman gives him no standing to object to the usury, if any there was. Generally speaking, the right to plead usury is personal to the party who agrees to pay it; and if he is disposed to abide by the agreement, one who thereafter assumes payment of the debt may not raise the plea. *Bacon v. Iowa S. & L. Assn.*, 121 Iowa 449; *Drake v. Lowry*, 14 Iowa 125, 127; 27 Ruling Case Law 288.

Moreover, plaintiff bases his demand for relief upon his tender to Harper and Wellman of full performance of the contract on his part, and full payment of the debt to them accord-2. USURY: estoppel ing to the terms of the contract. This is a con-to plead. clusive admission that such sum (which includes

the alleged usury) is their due. He cannot be permitted to get the advantage of a tender of the whole amount with one hand, and at the same time withdraw it with the other; and the decree as to this issue must be affirmed.

II.  We are not so well satisfied with the provision of the decree which, while expressly finding that, "on December 17, 1919, Martin offered to perform for his one half of the contract,

3. TENDER: keep-  or for all of it, if Bergman could not perform
ing tender good.  his part, and tendered the full amount then due, and demanded a deed, which was refused," yet compels plaintiff, who is found to have been in no fault, to pay the interest and charges which have accrued upon that indebtedness since such sufficient tender was made. The court's opinion does not suggest the reason for this requirement; but it is perhaps safe to assume that the court adopted the view of counsel for appellee, that the advantage otherwise accruing to the plaintiff by reason of his tender was lost because of his failure to produce or deposit the money in court. Appellees concede the tender made to them on December 17, 1919, but, as we have just noted, object that the tender was not "kept good." While the rule contended for is ordinarily held applicable in actions at law, it does not obtain in equitable actions, and especially actions for specific performance. This was definitely decided for this jurisdiction in *Hayward v. Munger*, 14 Iowa 522, where, admitting the rule in law actions, we declared that, "in an equitable proceeding, however, we are unwilling to give it effect." The same ruling was recognized in *McDaneld v. Kimbrell*, 3 G. Greene 335; *Jones v. Hartsock*, 42 Iowa 153; *Laverty v. Hall's Admr.*, 19 Iowa 526; *Binford v. Boardman*, 44 Iowa 53. See, also, *Cheney v. Libby,* 134 U. S. 68 (33 L. Ed. 818); *Earle's Admr. v. Blanchard,* 85 Vt. 288 (81 Atl. 913); *Breitenbach v. Turner*, 18 Wis. 148; *Murray v. O'Brien*, 56 Wash. 361 (105 Pac. 840); *Moore v. Norman*, 43 Minn. 428; *Cain v. Gimon*, 36 Ala. 168; *Whelan v. Reilly*, 61 Mo. 565; *Chicora Fertilizer Co. v. Dunan*, 91 Md. 144 (50 L. R. A. 401); *Thompson v. Crains*, 294 Ill. 270 (128 N. E. 508).

The *Earle* case, supra, like the one at bar, was an action for specific performance; and there, as here, the objection was raised that the tender had not been kept good. In affirming a

decree which refused the vendor's claim for interest after the tender, the court said:

"The defendants claim that the tender was of no effect, because clogged with a condition, and because not kept good by bringing the money into court. But this was not a simple tender; it was a tender of performance by one contracting party as a condition precedent to performance by the other. So it was proper to accompany the offer with a demand of performance by the other party, and was not necessary to bring the money into court."

To the same purport is the language of the Wisconsin court in the *Breitenbach* case, supra, that:

"It is sufficient in equity for the party to offer to bring the tender into court, and to be ready to do so as the court may direct."

Likewise, in the *Cheney* case, supra, the United States Supreme Court, answering a like objection, says that it was not necessary that the plaintiff should have brought the money into court, because "his offer in the bill to perform all the conditions and stipulations of the contract was sufficient to give him standing in court."

Precedents of this kind could be cited quite indefinitely, but we have collated sufficient to make clear the general scope of the rule we are applying. That plaintiff not only tendered the money in sufficient amount, but evidenced the tender in writing, and again embodied in his petition an unconditional offer and tender of full performance on his part, is shown by the record, and is so found in the decree, from which the defendants have not appealed. When such tender was made, there was no objection by defendants to its amount or sufficiency. The sole reason for refusing it, as indicated in the court's finding, was because, two days before the tender, appellees had agreed with Bergman to extend his time of performance until May. But the court found, and so decreed, that Bergman and plaintiff (though at that time apparently not acting in harmony) were tenants in common of the equitable interest in the lands which defendant had agreed to convey, and that the agreement with Bergman for an extension of time did not operate to extend the time for performance by plaintiff; thus sustaining

his right to tender performance on his part at once, and to demand conveyance to him of his fractional part of the property. Such being the situation, plaintiff was entirely within his right in making the tender of performance on his part and demanding performance by the defendants on their part; and it would be quite inequitable for defendants to refuse such tender or to make such conveyance only at the end of a protracted litigation, and at the same time burden him with a constantly increasing accumulation of interest on the very amount which they refused to accept when offered.

We hold, therefore, that the decree entered by the trial court should be, and it is hereby, modified by striking therefrom the provision requiring plaintiff to pay Harper and Wellman interest accruing upon his indebtedness to them after the date of his tender, December 17, 1919; and as thus modified, the decree of the district court is affirmed. The cause will be remanded to the district court, to determine the amount payable to Harper and Wellman on the basis of the modified decree, with the direction that, when such amount is ascertained, the time allowed the plaintiff to appear and make payment of the indebtedness so adjusted, and for Harper and Wellman to execute and deliver to him a conveyance in accordance with the terms of their contract and the decree of the court, shall be extended for a period of 40 days.—*Modified and affirmed.*

STEVENS, C. J., PRESTON and DE GRAFF, JJ., concur.